**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| **NATIONAL ASSOCIATION FOR THE ADVANCEMENT OF COLORED PEOPLE, (HOUSTON BRANCH) ("NAACP"), On Behalf of Itself and All Others Similarly Situated, as well as on Behalf of the General Public and Acting in the Public Interest, LEAGUE OF UNITED LATIN AMERICAN CITIZENS, DISTRICT VIII ("LULAC"), and Laurie Vignaud, individually** | §§§§§§§§§§ | **CIVIL ACTION NO. 4:18-cv-00603** |
| *Plaintiffs,* | §§ | **(JURY DEMANDED)** |
| **v.** | §§ | |
| **CAPITAL ONE BANK, N.A.,** | §§ | |
| *Defendant.* | §§§ | |

**PLAINTIFFS' ORIGINAL COMPLAINT**

**TO THE HONORABLE UNITED STATES DISTRICT COURT:**

This suit is brought by Plaintiffs, The National Association for the Advancement of Colored People, Houston Branch ("NAACP"), on Behalf of Itself and All Others Similarly Situated, as well as on Behalf of the General Public and Acting in the Public Interest, League of United Latin American Citizens, District VIII ("LULAC"), and Laurie Vignaud, individually, ("Vignaud") against Defendant Capital One Bank, N.A. ("Capital One") for the following reasons:

**I.**
**INTRODUCTION**

1.    This action seeks on behalf of the NAACP class, among other things, injunctive relief, declaratory judgment relief, attorneys' fees, and costs.  LULAC joins the suit because it and its members are also being injured by the defendant's conduct and joins in the requested relief

being sought by the NAACP on behalf of itself and its members.  Vignaud, individually, is a member of the putative NAACP class and asserts her own related claims against Defendant as alleged below.  Vignaud's individual claims are actionable under 42 U.S.C. 1981 and 1988 arising out of her complaints about Defendant's purposeful discrimination against Black and Latino customers, and unlawful redlining of minority communities in violation of the Fair Housing Act (42 U.S.C. § 3601, *et seq.*), provisions of the Equal Credit Opportunity Act (15 U.S.C. § 1691, *et seq.*), provisions of the Community Reinvestment Act (12 U.S.C. § 2901, *et seq.*), the United States Constitution, particularly the First and Fourteenth Amendments and subsequent remedial legislation enacted pursuant thereto as codified at 42 U.S.C. §§ 1981, 1982 and 1988.

## II.
## PARTIES

2.     Plaintiff NAACP is an independent branch of the oldest civil rights organization in America.  Its history, fights for justice and equality, and accomplishments are well-known.  Its mission includes ensuring economic progress and equality without discrimination based on race, and eliminating racial hatred and discrimination, including racial discrimination in housing, lending, extension of credit and banking practices.  The NAACP is a non-profit and non-partisan organization headquartered in Houston, Texas.  The NAACP, individually and on behalf of its members, has been injured by the Defendant's conduct complained of herein.   It has representational standing to pursue the claims asserted herein as a class action on behalf of its members.  Its request for injunctive and declaratory relief does not require participation of the members and each member has standing to seek the same relief in their own right.  In fact, the members, or any one of them, are in real and imminent danger of suffering immediate or threatened injury as a result of Defendant's racial redlining, withdrawal of banking services from predominately black and minority communities in which a great number of Plaintiff's members

reside, and predatory lending policies, which said members could directly pursue on their own. Also, the interests the NAACP seeks to protect in this suit are germane to its stated purpose of ensuring economic equality and eliminating racial bias, hatred and discrimination, including racial discrimination in housing, lending, and banking practices. Finally, although seeking injunctive and declaratory judgment relief for a class of its members, the NAACP also has standing to sue in its own right because Defendant's discriminatory policies and practices directly frustrate the Association's mission, reduces contributions and diverts its resources, including through investigation, advocacy and counseling, and litigation costs. Members of the NAACP have been injured in fact by Defendant's conduct complained of in this suit.

3.     Plaintiff LULAC is headquartered in Houston, Texas. Many of its members are also members of the NAACP and are of Hispanic descent. The allegations in this case show that Hispanic communities are likewise being discriminated against in the referenced manner. Thus, as a body of Hispanic and Black members, and to protect its members from the racial discrimination of Capital One as alleged in this suit. LULAC joins this suit and seeks the same relief from Capital One as the NAACP has alleged. Hereinafter, the allegations made on behalf of the NAACP are simultaneously adopted by reference as being asserted on behalf of LULAC.

4.     Plaintiff Laurie Vignaud resides in Houston, Harris County, Texas. She is an African American female who was assigned responsibilities by Defendant for monitoring the knowledge and reactions of the Black and Latino communities resulting from Defendant's purposeful discriminatory practice of closing its banks and traditional banking services in minority and low to middle income communities. While working for Defendant, Vignaud repeatedly called to the attention of Capital One management that they were violating the law, including the Community Reinvestment Act by removing banking services from Black, Latino and minority

communities while keeping the same services in predominately white communities. She also had personal knowledge of how Capital One closely monitored Black and Latino civil rights groups, including the NAACP, Black Lives Matter leaders, LULAC, the Urban League, and other civil rights organizations, in an effort to minimize these organizations' knowledge of Capital One's deliberate discrimination and cancellation of banking services in minority communities. Vignaud's race, membership in the class of individuals being discriminated against, alliance with certain politicians, and allegiance to the law prohibiting racial discrimination in providing banking services proved career-limiting. As a result, and inexplicably, Vignaud was "redeployed" (terminated) after nearly two (2) decades of exemplary employment in violation of 42 U.S.C. 1981 and her right to petition and associate with individuals of her choosing. Vignaud, both as a member of the NAACP and individually brings her individual claims against Defendant because of its discrimination against her based on her race, the exercise of her First Amendment rights, and her insistence that Blacks and Latinos be treated fairly in both employment and banking practices. It is discriminatory to provide traditional banking services to white customers and purposely remove those services from Black and Latino communities. She also seeks her individual damages in this case.

5.      Defendant Capital One Bank, N.A. ("Capital One") is a Delaware corporation which is authorized to conduct business in Texas. It is a national bank and financial services institution which is publicly traded and listed on the New York Stock Exchange. This Defendant may be served with process by serving its registered agent, Corporation Service Company, located at 100 Shockoe Slip, 2nd Floor, Richmond, Virginia and/or by serving its Chairman, Chief Executive Officer and President, Richard D. Fairbank, at 1680 Capital One Drive, McLean, Virginia 22102, or wherever he may be found.

## III.
## JURISDICTION AND VENUE

6.      The claims asserted in this suit arise, in part, under federal law, including under provisions of the Fair Housing Act (42 U.S.C. § 3601, *et seq.*), provisions of the Equal Credit Opportunity Act (15 U.S.C. § 1691, *et seq.*), The Community Reinvestment Act (12 U.S.C. § 2901, *et seq.*), the United States Constitution, particularly the First and Fourteenth Amendments, and subsequent remedial legislation enacted pursuant thereto including as codified in at least 42 U.S.C. §§ 1981, 1982 and 1988.

7.      Venue is proper in this District because Defendant's acts and omissions made the basis of this suit were committed, in part, in the Southern District of Texas.  28 U.S.C. § 1391.

8.      This Court possesses subject matter jurisdiction under 28 U.S.C. §§ 1331, 1343, 1345, 42 U.S.C. §§ 1981, 1988, and 3614, and 15 U.S.C. § 1691e(h).

## IV.
## INTRODUCTION AND FACTUAL BACKGROUND

9.      The NAACP and LULAC bring this suit in their representative capacities and as a class action seeking injunctive and declaratory judgment relief against Capital One because of its institutionalized and systematic racism in connection with the provision of banking services to Black and Latino members of the NAACP and LULAC relating to their access and ability to obtain mortgages, loans for home improvements, apply for lines of credit and other customary banking and credit services.  The pervasiveness of Capital One's discrimination toward Black and Latino communities is evidenced by the flagrant disparity between the amount of traditional and customary banking services extended by Capital One to White customers versus the purposeful curtailment, closing, and limited traditional banking facilities in predominately Black and Latino communities.  Further evidence of Capital One's purposeful discrimination against Blacks is

evinced in their media campaigns in which they hire well-respected black celebrities to push their ATM card to minorities while simultaneously closing down their brick and mortar banks in these communities and keeping similar structures in White communities.  In addition to closing down banks in Black and Latino communities, Capital One is disproportionately and deliberately by their actions increasing the digital divide between minority customers and white customers.  And, also reflecting a consciousness of their own discriminatory guilt, Capital One instructed Vignaud and other managers to "monitor" Black and Latino civil rights groups to see if they were noticing that Capital One was withdrawing banking services from their communities.  Vignaud complained about Capital One's discriminatory plans and closings of banks in minority communities in violation of the CRA.

10.    Capital One has engaged in disparate treatment of Black and Latino customers and communities and has adopted policies and practices that have a disparate discriminatory impact on African and Latino Americans in residential mortgage lending, credit and traditional banking services.  Blacks and Latinos are welcome to use Capital One's ATM cards, but do not appear to be desired banking customers for other typical lending or credit services—thus, the closure of Capital One banks in Black Latino communities.

11.    It is beyond dispute that the Black and Latino communities have long been victims of discriminatory banking and credit practices.  Generations of Blacks have been deprived the opportunity to participate in the American dream by banks that have refused to give them mortgage loans simply because of the color of their skin or placed them in unfavorable loans that decimate their finances.  Capital One has now taken these discriminatory practices one step further–it has chosen also to redline and withdraw their brick-and-mortar banking facilities from Black and Brown communities while retaining physical banking presences in White communities.  To pacify

Black customers, Capital One has chosen popular and respected black actors/personalities—(like Spike Lee, Samuel L. Jackson, Common, and Charles Barkley)—to unwittingly push Capital One's debit cards in commercials, asking "What's in your Wallet?"  In fact, these commercials are part of a devious ploy to hide what is really going on.  Capital One is in fact telling black and brown communities "Only use our debit bank cards for your banking needs since we are closing our banks in your communities!"  Such a practice is disproportionately affecting and harming Black and Brown communities in violation of the law.

12.     Capital One records show that it has purposely decreased its fixed banking facilities in Black and Brown communities by more than half while maintaining at least the same or more banking facilities in predominately White communities over the same period of time.  Plaintiff Vignaud complained that such disparate closures violated the law and were contrary to the requirements of the fair lending practices act and legal duty to reinvest in such communities.  Capital One knows its discriminatory bank closings are contrary to legal mandates, but has chosen to continue to do so.

13.     Capital One's substantial reduction of banking facilities in minority communities did not occur by accident.  It occurred because of their purposeful and intentional plan to reduce minority customers to "debit-card-bankers-only" who are permitted to deposit and withdraw their money from Capital One, but not be afforded full-service banking facilities in their communities (including offices and staff to work on applications for mortgages, credit or loans)—such full-service banking facilities are reserved only for Capital One's white customers.  Black and Latino customers are welcome to deposit their money with the bank, but dare not apply for credit, a mortgage or a loan.

14.     These allegations are not premised on mere "information and belief" but are based on fact.  Capital One's scheme has been ongoing for a number of years and only recently has evidence of its offensive practice been "outed" by a longtime member of the NAACP with personal knowledge of the unlawful practices of the bank.  One of Plaintiff Vignaud's primary duties for Capital One was to promote the Defendant's compliance with The Community Reinvestment Act ("CRA"), 12 U.S.C. § 2901.  Vignaud had been employed as the Senior Vice-President/Senior Director for the South Central territory of the United States for Capital One for over a decade. During her entire tenure at Capital One, Vignaud had never received any negative evaluations or ever been placed on a performance review plan.  In fact, she received numerous professional accolades and awards for her work that even her bosses had not achieved.  After serving an exemplary career with Defendant, inexplicably on September 18, 2017 Vignaud was informed by her white female manager that her position was suddenly being "eliminated"–despite the fact that Capital One's obligations under and non-compliance with the CRA were not resolved.  All seemed harmonious at Capital One until Vignaud realized that Capital One was never intending to comply with the CRA and was purposely redlining and withdrawing customary banking services from black and brown communities.

15.     Vignaud was also aware that Capital One was spying on Black, Latino and civil rights groups (including the NAACP, Black Lives Matter, LULAC, and the Urban League) for any backlash because of their discriminatory bank closings.  Bank executives masked their spying by couching it as "monitoring" so they could create a corporate "narrative" to rebut allegations that the bank was in fact discriminating against minorities.  Vignaud complained that that the bank closures circumvented the law and its CRA reporting requirements with the Office of the Comptroller of the Currency (the designated federal investigatory agency under the U.S.

Department of Treasury).  Bank closures were scheduled and implemented in a manner to try to avoid detection by the bank regulators.  As a Black woman, Vignaud expressed concern about and opposition against Capital One's discriminatory bank practices.  Shortly thereafter, she ceased being offered developmental and promotional opportunities while the same opportunities were being offered to less-qualified White employees; she was removed from work assignments which were in turn being directed to White employees with little to no experience, and she was advised that her marketing strategies were not effective while in fact her strategies were later used as a model for Capital One nationally.  Ultimately, the purported "elimination" of Vignaud's position was simply a pretext for the discriminatory termination of her from the Company because of her race—*i.e.*, she as a black female was identified as being too sympathetic to the Black community and opposed to Capital One's purposeful discrimination aimed at Black and Brown communities. She brings her own individual claims in this case because Capital One's actions violate 42 U.S.C. 1981 and her right to associate with certain political figures and be a member of the class represented in this suit.

16.     The NAACP and LULAC both bring this class action seeking declaratory judgment and injunctive relief based upon Capital One's violations of the Fair Housing Act, the Equal Credit Opportunity Act, the Community Reinvestment Act, and the Civil Rights Act.  Vignaud brings her individual claims pursuant to 42 U.S.C. 1981.

## V.
## CLASS ACTION ALLEGATIONS

17.     The NAACP and LULAC bring this suit as a class action pursuant to Federal Rule of Civil Procedure 23(a) and (b)(2) or (b)(3), as appropriate, on behalf of their organizations, their joint members and the members of the class as more fully described below.

18.     Excluded from the Class are Defendant, its officers, directors and current employees, members of their immediate families and each of their legal representatives, heirs, successors or assigns, and any entity in which Defendant has a controlling interest; members of the Plaintiff organization who are not African American or Latino; and any judge, justice, or judicial officer presiding over this matter and the members of their immediate families and judicial staff.

19.     This class action is filed and shall be comprised of the following:

> All African American and Latino people who reside within a thirty (30) mile radius of any Capital One bank building or office or physical location with a Capital One street address that was and/or is located in the continental United States and who had a banking encounter with or applied to have a banking relationship with Capital One Bank within the last ten (10) years and who have not settled any of the claims with Defendant that are being asserted herein on behalf of the class.

20.     This action is properly maintainable as a class action because all requirements of Rule 23 are satisfied:

21.     *Numerosity*:  The members of the class for whose benefit this action is brought are dispersed throughout the state and nation and are so numerous that joinder of each individual member of the class would be impracticable.  The class members are conservatively exceed over 10,000 members.

22.     *Typicality*:  The NAACP has representative standing to bring the claims asserted herein because the Association represents members whose interests do not conflict with the interests of any members of the class and are subject to the same discriminatory treatment, policies and practices of the Defendant that are typical of what the class has suffered and is suffering.

23.     *Common Questions of Law and Fact Predominate*:  The questions of law and fact common to members of the class predominate over any questions affecting individual members of the class.  Among the questions of law and fact common to the class are:

a.     The nature and scope of Defendant's policies and procedures relating to the withdrawal of brick-and-mortar and customary banking establishments from African American and Latino communities versus its practice regarding such banks remaining in Caucasian communities;

b.     Whether Defendant has adopted a deliberate strategy to remove traditional banking services from Black and Brown communities to the detriment of those communities;

c.     Whether Defendant's closures of banks in Black and Brown communities, and its reluctance to extend credit, mortgage and lending services to Black and Brown Americans, is a violation of the Fair Housing Act (42 U.S.C. § 3601, *et seq.*), provisions of the Equal Credit Opportunity Act (15 U.S.C. § 1691, *et seq.*), The Community Reinvestment Act (12 U.S.C. § 2901, *et seq.*), the United States Constitution, particularly the First and Fourteenth Amendments and subsequent remedial legislation enacted pursuant thereto as codified in 42 U.S.C. §§ 1981, 1982 and 1988; and

d.     Whether Defendant's discriminatory practices are pervasive, continuing and/or company-wide and should be enjoined.

24.     *Adequacy of Representation*:  The NAACP will fairly and adequately protect the interests of the class and has retained the undersigned counsel who is competent and experienced in prosecuting class action litigation.  The NAACP has no interests antagonistic to or in conflict with the class that the NAACP seeks to represent.  Also, the counsel representing the NAACP in this case has successful prosecuted several class action suits without incident or difficulty.

25.     *Injunctive/Declaratory Class*:  Defendant has acted or refused to act on grounds generally applicable to the class, thereby making final injunctive relief and declaratory judgment relief proper with respect to the class. FED. R. CIV. P. 23(b)(2).

## VI.
## CAUSE OF ACTION – Fair Housing Act – 42 U.S.C. § 3601, *et seq.*

26.     The NAACP and LULAC incorporate the preceding paragraphs.

27.     The Fair Housing Act was first enacted in 1968 to prohibit discrimination in connection with real estate transactions, including home purchases, mortgages, lending, and refinancing.  This Act has been broadly construed by courts to provide effective relief to protect consumers from discrimination and predatory acts.

28.     Capital One's actions of purposefully redlining and withdrawing from minority communities is *per se* discriminatory in that it has the desired effect of removing African Americans, Latino and other minorities from Capital One's mortgage borrowing base.  This activity is further prohibited pursuant to the Community Reinvestment Act.

29.     Defendant also violated 42 U.S.C. §§3601, 33604, and 3605.  Section 3605 states that "[i]t shall be unlawful for any person or other entity whose business includes engaging in residential real estate related transactions to discriminate against any person in making available such a transaction, or in the terms or conditions of such a transaction, because of race . . . ."  NAACP African American and Latino members have been subjected to these discriminatory practices at the hands of Capital One.  As a proximate result of Defendant's systematic violation of these laws, Plaintiff and the Class are entitled to injunctive relief to require Capital One to cease its racial discrimination against African Americans and Latinos and to require it to comply with the law.

## VII.
## CAUSE OF ACTION – Equal Credit Opportunity Act – 15 U.S.C. § 1691, *et seq.*

30.     The NAACP and LULAC incorporate the preceding paragraphs.

31.     The Equal Credit Opportunity Act was first enacted in 1974 as a consumer protection statute prohibiting discrimination in the issuing of credit.  The Act has been broadly construed by courts in order to protect consumers from discriminatory practices.

32.     Defendant is a "creditor" and extends "credit" within the meaning of 15 U.S.C. § 1691(e).  Mortgage loans offered to NAACP and LULAC members are credit transactions under the Act.  The Act provides that "[i]t shall be unlawful for any creditor to discriminate against any applicant, with respect to any aspect of a credit transaction . . . on the basis of race."  15 U.S.C. § 1691(a)(1).  Class members have been systematically and continuously denied banking and credit services by Capital One on a racially discriminatory basis.

33.     Defendant discriminated against these NAACP and LULAC members on the basis of race by redlining and withdrawing banking service from predominately African American and Latino communities.  Such actions constitute *per se* discrimination in that it deliberately removes African Americans and Latinos from accessing primary banking services provided by Capital One to White customers.  This activity is further prohibited pursuant to the Community Reinvestment Act.

34.     Capital One discriminated against the class members on the basis of race and will continue to engage in conduct that disregards the rights of NAACP and LULAC members and class members causing irreparable injury if not enjoined by this Court.  Because of Capital One's systematic and deliberate violation of this law, Plaintiffs and the class are entitled to the requested relief provided for under the law and which relief is now requested in this suit.

## VIII.
## CAUSE OF ACTION – Civil Rights Act – 42 U.S.C. § 1981, 1982, *et seq.*

35.     The NAACP and LULAC incorporate the preceding paragraphs.

36.     The Civil Rights Act of 1866 and 1870, and later expanded upon through 1991, prohibits racial discrimination in the formation and issuance of contracts and intentional interference with the purchase and holding of real estate.

37.     Defendant intentionally discriminated against Plaintiffs' members and the Class by redlining and intentionally withdrawing its traditional banking, credit and mortgage services from Black and Latino communities.

38.     Capital One's actions violate 42 U.S.C. §§ 1981 and 1982.  As a proximate result of Defendant's conscious and systematic violation of these laws, Plaintiffs and the class are entitled to the relief permitted under these laws, including injunctive relief against Capital One.

### IX.
### CAUSE OF ACTION – RACIAL DISCRIMINATION UNDER 42 U.S.C 1981 AND VIOLATIONS OF VIGNAUD'S FIRST AMENDMENT RIGHTS

39.     Vignaud also sues Capital One for racial discrimination against her in violation of her First Amendment rights to associate and petition and retaliating against her because of her membership in the class and racial identity.  These claims are being brought under 42 U.S.C.  1981, et seq.  Vignaud is entitled to damages in excess of $1,000,000 because of Capital One's wrongful and unlawful discrimination.

### X.
### ATTORNEY'S FEES

40.     Defendant's conduct and resulting damages and losses to Plaintiffs have necessitated Plaintiffs retaining the legal services of The Hall Law Firm to pursue the claims asserted in this suit and to initiate and prosecute the asserted claims.  Plaintiffs seek recovery of their reasonable and necessary attorney's fees under 42 U.S.C. § 1988, and any other applicable law or statute, as well as recovery of their expenses, court costs, and expert witness fees.

## XI.
## JURY DEMAND

41.     Plaintiffs demand a trial by jury.

## XII.
## PRAYER

WHEREFORE, PREMISES CONSIDERED, the NAACP and LULAC, collectively and

on behalf of the putative Class as identified above, or as the Court may permit, and Laurie Vignaud

pray for entry of judgment in at least the following particulars:

(a)     Certification of the requested and defined class and appointment of Plaintiffs
        NAACP and LULAC and their counsel as class representatives and as class
        counsel, respectively;

(b)     Enter judgment in favor of Plaintiffs and the Class against Capital One;

(c)     Declare Capital One's practices, as described herein and proved at trial, to be a
        violation of the Fair Housing Act, the Equal Credit Opportunity Act, the
        Community Reinvestment Act, and the Civil Rights Act as codified in the laws
        referenced herein and as proved up at trial;

(d)     Damages, fees, and costs as permitted for Defendant's violations of 42 U.S.C. §
        1981;

(e)     Interest and costs at the highest legal rate;

(f)     Compensatory and punitive damages for the damages sustained by Vignaud;

(g)     An award of civil penalties against Capital One in order to vindicate the public
        interest;

(h)     Attorney's fees;

(i)     Expert witness fees, expenses;

(j)     Injunctive relief as may be appropriate to end Capital One's unlawful practices; and

(k)     Such other and further relief, equitable, injunctive and declaratory, to the fullest
        extent allowed in law and equity, to which Plaintiffs may show themselves justly
        entitled.

Respectfully submitted,

**THE HALL LAW FIRM**

*/s/ Benjamin L. Hall, III*

**Benjamin L. Hall, III** (*Lead Attorney*)
State Bar No. 08743745
Federal Bar No. 8787
Email: bhall@bhalllawfirm.com
**William L. Van Fleet, II**
State Bar No. 20494750
Federal Bar No. 3670
bvfleet@comcast.net
530 Lovett Boulevard
Houston, Texas  77006
Telephone: (713) 942-9600
Facsimile:  (713) 942-9566

**ATTORNEYS FOR PLAINTIFFS,
NAACP AND LULAC ON BEHALF OF
THEMSELVES AND THE CLASS
MEMBERS, AND LAURIE VIGNAUD**

**- AND -**

**DR. JAMES M. DOUGLAS**

*/s/ James Matthew Douglas*

**James Matthew Douglas**
State Bar No. 06044000
3100 Cleburne Ave.
Houston, Texas 77004
Telephone: (713) 313-7352
Email: douglasj@tsu.edu

**ATTORNEY FOR NAACP**

**- AND -**

**DOVALINA & EURESTE, L.L.P.**

*/s/ Enrique M. Dovalina*
**Enrique M. Dovalina**
State Bar No. 06060300
1707 S. Houston Rd
Pasadena, Texas 77502
Telephone: (713) 624-1000
Email: rdovalina@comcast.net

**ATTORNEY FOR LULAC**

**- AND -**

**THE VILLACORTA LAW FIRM**

*/s/ Adrian V. Villacorta*
**Adrian V. Villacorta**
State Bar No. 24003111
Federal ID No. 31243
530 Lovett Blvd.
Houston, Texas 77006
Telephone: (832) 991-8864
Facsimile: (832) 201-7469
Email: avillacorta@avvlaw.com

**ADDITIONAL ATTORNEY FOR LAURIE
VIGNAUD**